Otto P. Krause, Plaintiff-Appellant, *v.* Caterpillar Tractor Company, Defendant-Appellee.

(No. 70-115;

Third District—April 12, 1971.

Vonachen, Cation, Lawless, Trager & Slevin, of Peoria, for appellant.

Heyl, Royster, Vielker & Allen, of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an action under the Structural Work Act, commonly called the Scaffolding Act to recover damages for an injury to the Plaintiff-Appellant, Otto Krause, resulting from a fall caused by a ladder slipping. The Circuit Court of Peoria County granted a motion for summary judgment in favor of the Defendant-Appellee, Caterpillar Tractor Company, from which judgment plaintiff has appealed. No evidence was introduced so the questions raised are solely on the pleadings and the exhibits attached thereto.

Defendant, Caterpillar Tractor Co., leases a hangar from Greater Peoria Airport Authority. The only formal writing of the lease terms is contained in a letter dated December 10, 1965 written by the Greater Peoria Airport Authority to Caterpillar Tractor Co. The only provision contained therein relating to repairs to the hangar stated that the tenant would provide its own interior maintenance and janitorial service and the lessor would provide outside maintenance and snow removal.

Caterpillar purchased a new Saberliner. It was then discovered that unless it had a high fuel load, its tail projected too high to clear the part of the building forming the track on the inside of the hangar door. A section of the track about four feet long and six inches high was thereupon cut out of the center of the hangar doors to enable the tail section of the Saberliner to clear the doorway even when it had a low fuel load. This thereupon left a hole in the building over the doorway. Winter was approaching and it was determined that this hole had to be patched up so the cold air would not pour through the hole and make the hangar hard or expensive to heat. (The lease provided that Caterpillar had to pay for heating the hangar.)

Otto Krause, the plaintiff, an employee of the Greater Peoria Airport Authority, was on December 13, 1966, instructed by his supervisors to do the patching above the door. He was supplied with an 18 foot ladder with no safety devices on the bottom thereof and while working on the inside of the building the ladder slipped and he fell to the floor seriously injuring himself.

In its motion for summary judgment defendant, Caterpillar asserted

there was no triable issue of fact because based on the pleadings, depositions, affidavits and counter-affidavits the Airport Authority was in charge of the work and Caterpillar was not in charge of the work as a matter of law. Prior to the filing of the motion for summary judgment depositions had been taken of numerous Airport Authority employees and supervisors as well as employees of Caterpillar engaged in the hangar activity.

The basis of this controversy is ch. 48, par. 69, Ill. Rev. Stat., 1965, which provides in part, "Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge or viaduct or other structure within the provisions of this act, shall comply with all the terms thereof * * *". The only issue presented by this appeal is the application of the provision "having charge of" the work.

Plaintiff in seeking to reverse the judgment of the trial court argues that at a minimum a question of fact is presented by the despositions and affidavits sufficient to require that the issue of whether defendant was in charge of the work be submitted to a jury.

■■ *Larson v. Commonwealth Edison Company,* 33 Ill.2d 316, 211 N.E.2d 247, is a recent leading case on the subject of this controversy. The opinion reviews in some detail the history and prior observations of our courts regarding the applicable basis of liability as stated in par. 69 quoted aforesaid. *Larson* was particularly concerned with the propriety of an instruction defining "having charge of" in terms of control and supervision. In holding the definition of the terms was inappropriate the court stated, "The term 'having charge of' is one of common usage and understanding, and it is our opinion that further attempt at definition can only lead to confusion and error.". The court further rejected the contention that "having charge of" was limited to control or supervision. In determining who may be in charge of an activity within the statute, ideas of control and supervision are useful in describing the relation of the parties to the activity but other aspects of the relation are also relevant. It is also well settled that more than one party may contemporaneously have charge of the work and the provision neither contemplates nor requires exclusive charge. *Moroni v. Gulf, Mobile and Ohio Railroad Company,* 86 Ill.App.2d 426, 230 N.E.2d 55 and *Carlson v. Metropolitan Sanitary District of Greater Chicago,* 64 Ill.App.2d 331, 213 N.E.2d 129.

Defendant Caterpillar, in support of the action of the trial court, argues that it must have some authority or right in relation to the activity resulting in injury before it can be regarded as having charge of the work. As a lessee and tenant Caterpillar insists that its status and the terms of the lease are conclusively inconsistent with any inference that it was in charge of the repairs. Furthermore according to Caterpillar, having no authority,

what it may have done was immaterial as a basis of liability and reflected the actions of a "concerned tenant".

■■■ Generally speaking we are inclined to believe that there is nothing in the relation of lessor, lessee or the status of either which requires the conclusion that if one is in charge of a construction activity on the premises the other can not be. The lessor and lessee may and usually do have a mutual interest in the repair and improvement of the premises. The extent to which each may participate in the improvement or repair of the premises may be included as a lease provision but whether or not included the conduct of the parties is of crucial importance.

*Bott v. Anding,* 296 F.2d 706 and *Kiszkan v. Texas Co.,* 22 Ill.2d 326, 175 N.E.2d 401, are illustrative of situations involving lessors and lessees but are of no special relevance to the problem at hand because the underlying facts are not analogous. Such cases demonstrate that having charge of the work presents the same considerations when lessors and lessees are involved as when other parties are involved.

In considering the application of the statute to the facts of this case it is our conclusion that Caterpillar is not excluded therefrom merely because it claims the status of lessee. More important and more significant is the conduct of the parties. From a review of the facts as set forth in the affidavits and depositions it is our conclusion that there are facts from which it may be reasonably inferred that Caterpillar had charge of the repairs. If so then the court erred in granting defendant's motion for summary judgment.

■■ We believe it necessary to mention or describe only some of the facts which in our opinion support our conclusion that a genuine issue of fact exists. According to the depositions the strip requiring repair was cut out at some previous time by someone employed by Caterpillar. If making the hole was properly within Caterpillar's authority whether actual, implied or inferrable from a course of conduct, the repair thereof could at least be regarded with similar import. If Caterpillar had the authority and right to cut the hole or slot in the first place it may be inferred that it also had the right and authority to repair the hole and may have even had the duty or responsibility to do so. These circumstances are consistent and indicative of an important consideration which is included in many of the depositions namely that the duties and responsibilities of both Caterpillar and the Airport Authority were so diffused that the functions of each can not be delineated. Many of the deponents described Caterpillar's participation in the repairs and improvements of the hanger in such a way that one can reasonably infer that Catterpillar was interested and participated in both the means and methods of doing the work.

The last event which we believe is significant in support of plaintiff's

position is one which occurred after plaintiff fell from the ladder. On the day of the fall plaintiff was assisted by a co-worker, Frank Bruninga. According to the latter's affidavit he returned to complete the work two or three days later but before he climbed the ladder he was stopped from so doing by Hayes, a Caterpillar employee, who insisted that the ladder be braced before Bruninga used it. Hayes, the Caterpillar employee, provided a brace for the ladder by placing a tow machine against the bottom of the ladder. The towing machine was described as a heavy tractor like machine used for moving airplanes in and out of the hangar.

■■ As indicated in *Larson v. Commonwealth Edison Company, supra,* such evidence of defendant's conduct after the injury has occurred is properly considered as bearing on the question of who may have been in charge of the activity although not properly considered in determining whether the Act was involved. This event seems to speak for itself so far as Caterpillar's authority is concerned and although it is cumulative to the other facts and circumstances it furnishes substantial support for our conclusion that a jury question is presented.

For the foregoing reasons the judgment of the Circuit Court of Peoria County is reversed and the cause is remanded with directions to proceed in accord with views expressed herein.

Reversed and remanded with directions.

ALLOY, P. J., and SCOTT, J., concur.