THOMAS J. MOLLOY, SR., Plaintiff-Appellant, *v.* SANTUCCI CONSTRUCTION COMPANY, Defendant-Appellee.

First District (5th Division)    No. 79-9

Opinion filed November 2, 1979.

Dowd, Dowd and Dowd, Ltd., of Chicago, for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom and Andrew Fylypovych, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from a summary judgment entered in favor of defendant, and the sole issue raised is the propriety of the judgment.

This action for personal injury was brought by plaintiff, a bricklayer, under the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, par. 60 *et seq.*) (hereinafter referred to as the Act) against defendant and others. In his complaint, plaintiff alleged that he was injured when he fell from a scaffold during construction work on the premises of defendant; that the scaffold was unsafe, in violation of the Act; and that defendant was in charge of the work being performed. In its answer, defendant admitted ownership of the premises but denied all other pertinent allegations of the complaint.

Defendant then moved for summary judgment supported by the affidavit of its vice president, Angelo Ventrella, in which he stated that defendant had retained contractors to perform construction work on the premises; that no scaffolds or appurtenances thereto were supplied by it to any of the contractors involved, and that defendant "did not instruct, direct, interfere with, or otherwise participate in the way, manner, method or equipment used by the contractors involved." Also attached to the motion was a copy of the contract entered into between plaintiff's employer and defendant. In opposition to the motion, plaintiff submitted his own affidavit, stating that during the course of his work on defendant's premises he was instructed by a man he knew only as "Angelo," whom he believed to be defendant's president, to leave certain openings in the brickwork so that electrical wiring and outlets could be installed for a sign to be placed later; that he had also discussed with "Angelo" the proper method of refilling an opening in a wall resulting when a window became loose during the construction; that "Angelo" instructed him not to replace the window at that time; that "Angelo" made inspections of the progress of the work on almost every day of plaintiff's employment; that

defendant's employees removed certain bumper guards to permit brickwork repair, and they replaced them when the brickwork was completed; that on a number of occasions lumber was obtained from defendant to level the scaffolds constructed for use by the bricklayers; that defendant's trucks hauled away all waste material from the work site; and that defendant made available its electric hammers for use by the bricklayers.

The trial court in entering summary judgment for defendant found (1) the contract did not reserve the right to control nor did defendant exercise control over the work; (2) the affidavit of plaintiff failed to raise an issue of fact as to whether defendant had charge of the work; and (3) as a matter of law, defendant was not in charge of the work.

OPINION

● 1 It is established that summary judgment should be granted only when the pleadings, depositions and admissions on file, together with the affidavits (if any) show there was no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1977, ch. 110, par. 57(3); *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457; *Heidelberger v. Jewel Companies, Inc.* (1974), 57 Ill. 2d 87, 312 N.E.2d 601.) However, summary judgment is a drastic remedy and should be granted only when the movant's right thereto is clear and free from doubt (*Marshall v. City of Chicago Heights* (1978), 59 Ill. App. 3d 986, 376 N.E.2d 657), and, in passing on the motion, the trial court must construe the documents presented strictly against the movant and liberally in favor of the opponent (*Littrell v. Coats Co.* (1978), 62 Ill. App. 3d 516, 379 N.E.2d 293). Further, the opponent may rely upon reasonable inferences which may be drawn from the materials considered on the motion in the determination of whether a genuine issue of material fact exists. *Gehrman v. Zajac* (1975), 34 Ill. App. 3d 164, 340 N.E.2d 184.

In the instant appeal, the trial court found as a matter of law that defendant was not a person "having charge of" the work, as that term is used in the Act, and the single issue presented here is whether from the pleadings and affidavits a factual question exists in that regard.

■ The duty is placed upon each class of persons named in the Act, including the owner, if such person or persons has charge of the work. (Ill. Rev. Stat. 1977, ch. 48, par. 69; *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785.) In *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247, the court stated:

"The term 'having charge of' is one of common usage and

understanding, and it is our opinion that further attempt at definition can only lead to confusion and error." (33 Ill. 2d 316, 323, 211 N.E.2d 247, 252.)

The courts have held, however, that the question as to who has charge of construction work is ordinarily one of fact for the jury. (See *McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 338 N.E.2d 868; *Voss v. Kingdon & Naven, Inc.* (1975), 60 Ill. 2d 520, 328 N.E.2d 297; *Kobus v. Formfit Co.* (1966), 35 Ill. 2d 533, 221 N.E.2d 633; *Larson v. Commonwealth Edison Co.*; *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*) In this regard, however, summary judgment was held to be proper where no facts were disclosed from which the trier of fact could have found that a person had charge of the work being performed. For example, in *Kiszkan v. The Texas Co.* (1961), 22 Ill. 2d 326, 175 N.E.2d 401, the court in affirming summary judgment stated that there was "not a scintilla of evidence that the defendant owner had charge of the construction * * * ." (22 Ill. 2d 326, 330, 175 N.E.2d 401, 403.) See also *Carruthers v. B. C. Christopher & Co.*, where summary judgment was granted in favor of a lessee of premises where there was no basis to submit the question of having charge to the trier of fact.

In its consideration of the motion for summary judgment in the instant case, the trial court had only the information presented by defendant in the affidavit of its vice-president, Angelo Ventrella; namely, that while defendant was the owner of the premises, it did not supply any scaffold or appurtenances thereto and did not instruct, direct, interfere with or otherwise participate in any manner, method or equipment used by the contractors involved. The contract between plaintiff's employer and defendant was attached to the affidavit but consisted only of a single page spelling out the specific work to be performed by plaintiff's employer.

We initially note that defendant's affidavit attempted only to negate supervision and control, which is only one factor to be considered in determining whether a person has charge of the work. As stated in *Larson v. Commonwealth Edison Co.*:

> "The term 'having charge of' is a generic term of broad import, and although it may include supervision and control, it is not confined to it. As was said of the word 'charge' in *People v. Gould*, 345 Ill. 288, 323: 'The word does not necessarily include custody, control or restraint, and its meaning must be determined by the associations and circumstances surrounding its use. "To have charge of" does not necessarily imply more than to care for or to have the care of.' Thus, while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the

ultimate factual question of whether an owner is 'in charge,' they are not necessary or conclusive factors, nor is either made a *sine qua non* for liability under the statute. Rather, consistent with its beneficial purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which the injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure." 33 Ill. 2d 316, 321-22, 211 N.E.2d 247, 251.

Here, defendant asserts only that it "did not instruct, direct, interfere with" the work but does not negate other factors that should have been considered, such as whether it had the right to control the work, whether exercised or not (see *Norton v. Wilbur Waggoner Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 394 N.E.2d 403), or whether it had the right to and should have stopped the work if it knew or should have known it was being done in an unsafe manner (*Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630). See also *Carruthers v. B. C. Christopher & Co.*, where in the dissenting opinion it was stated:

"In this case, no mention is made whether defendant had the right to stop the work and certainly no one would question an owner's legal right to terminate, for cause, the work being done, at any time." 57 Ill. 2d 376, 383, 313 N.E.2d 457, 461.

Moreover, defendant's supporting affidavit is contradicted by that of plaintiff, who states that "Angelo," a man he believed to be president of defendant, (1) made inspections of the work almost every day; (2) on one occasion instructed plaintiff to leave certain openings in the brickwork for electrical outlets; and (3) on another occasion discussed with plaintiff the proper method of refilling an opening in the wall and, at the same time, instructed plaintiff not to replace a window at that point. Furthermore, plaintiff also stated in his affidavit that defendant provided lumber used to level scaffolds on which the bricklayers were working and that defendant's employees did certain work in connection with the construction, such as taking off metal bumpers to allow the bricklayers to do certain of their work; removing waste material from the work site; and making available electric hammers for use by the bricklayers.

Defendant, referring to and relying heavily on *Norton v. Wilbur Waggoner Rental & Excavating Co.*, states the following in its brief:

"In that case [Norton] the evidence established that the owner had an agent on the job site almost every day. The owner ordered the contractors to make changes in the work because some of it had been performed in a substandard manner. Also, employees of the

owner moved equipment within the building under construction to allow the contractor access to the work areas. The owner's agent was there to ensure contract compliance insofar as specifications and work progress were concerned. However, he never inspected for safety, never held safety meetings and never discussed safety procedures with the contractor.

The Court held that under such circumstances, which are strikingly similar to the facts of the present case, the owner was not 'in charge of' the work performed."

We agree with defendant that the facts in *Norton* were strikingly similar to those in the present case. We note, however, that after the filing of defendant's brief in this court, the opinion in *Norton* was withdrawn and another opinion was subsequently filed on July 19, 1979, in which the supreme court held that those facts were sufficient to justify a finding that the owner was in charge of the work performed.

Additionally, the *Norton* court, in discussing *McGovern v. Standish* (1976), 65 Ill. 2d 54, 357 N.E.2d 1134, also relied upon by defendant, stated as follows:

" 'If the language in the majority opinion in *McGovern* was intended to mean that *it may be shown* that a person was "in charge of the particular operations which involved the violation from which the alleged injury arose" (65 Ill. 2d 54, 67) either by proof that he exercised control, or that the right to control the work existed, whether exercised or not, it correctly states the law.' (Emphasis added.) Second, as the *McGovern* court noted, the right to stop the work is not 'conclusive in resolving the question of whether a person has charge of the work within the meaning of the Act. [Citations.] Rather, such a determination must rest upon an *assessment of the totality of the circumstances.*' (Emphasis added.) (65 Ill. 2d 54, 68.)" 76 Ill. 2d 481, 490.

Included in the circumstances here must be considered the allegations of plaintiff's complaint alleging that he fell from a scaffold which was unsafe in that it "was affixed in such manner as to permit it to move or slide under the weight of a person working thereof" and the assertions in plaintiff's affidavit that (1) defendant supplied planks for the leveling of the scaffold; (2) made inspections of the progress of the work almost every day that plaintiff was employed; (3) instructed plaintiff to leave certain openings in the brickwork; and (4) discussed with him the proper method of filling an opening in the wall, with an instruction that he was not to replace a window at that time.

In our consideration of the totality of the circumstances and construing the documents presented strictly against defendant, we conclude that a factual issue exists as to whether defendant was one

having charge of the work and that summary judgment was improperly granted.

We reverse and remand for further proceedings.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.